OLD LINE INSURANCE COMPANY, APPELLEE, V. ELDON STARK ET AL., APPELLEES: ELMWOOD STATE BANK, APPELLANT.

FILED FEBRUARY 13, 1934. No. 28760.

*Carl D. Ganz* and *W. A. Robertson*, for appellant.

*Dwyer & Dwyer*, contra.

Heard before GOOD, EBERLY and DAY, JJ., and BLACK-LEDGE and RYAN, District Judges.

BLACKLEDGE, District Judge.

This case is presented here by the Elmwood State Bank, defendant and sole appellant. It is an action to foreclose certain mortgages, in the trial of which it developed that the title of the original mortgagor was derived from the will of Joseph Mullin which was probated in January, 1916, and contained the following provisions:

"I give and bequeath to my daughtar, Minnie B. Stark, a life lease on the following described real estate: The west half of the southwest quarter of section eight (8), range ten (10), town ten (10), in Cass county, Nebraska, together with the west thirty acres of the northwest quarter of the northwest quarter of section seventeen (17), range ten (10), town ten (10), in Cass county, Nebraska. All of this subject only to the one-half the expense of furnishing a home and maintenance for my stepmother aforesaid. The residue of the interest in the last described real estate to which my daughter Minnie B. Stark shall have a life lease I give and bequeath in fee simple to the lawful heirs of my daughter Minnie B. Stark. My desire being that my daughter Minnie B. Stark shall have a life lease to the real estate described in clause seven of this will and that her lawful heirs shall have it in fee simple without any encumbrance or lien thereon upon the death of the said Minnie B. Stark."

The district court entered a decree of foreclosure in the plaintiff's behalf and awarded to the appellant a subsequent lien upon certain interests in the real estate involved.

The appellant states in its brief that there is only one issue involved in the case, to wit, whether the mortgages asked to be foreclosed are valid liens upon the land involved, and that this issue depends upon (1) whether or not the will of Joseph Mullin by which the mortgagor, Minnie Belle Stark, derived title effectively restricted the land from being encumbered, and (2) whether or not the restriction in the will was cured by the deed given to her by her children prior to the execution of the mortgages.

For a correct understanding of the situation, the following additional facts appearing in the record should be noted. Any interest of the stepmother named in the will was eliminated by a release as to this land executed by her and she died before the institution of this suit.

Minnie Belle Stark and her husband, John Gerry Stark, after the probate and allowance of the will, entered into the possession of the premises and continued to occupy the same as their homestead until their deaths, respectively, in 1925 and 1931. They had four children, all of whom were adults at all times referred to in these transactions.

In September, 1923, these children executed a deed for the premises to their mother Minnie Belle Stark containing these recitals:

"That the said parties of the first part * * * have remised, released, and quitclaimed, and by these presents do, for themselves, their heirs, executors and administrators, remise, release, and forever quitclaim and convey unto said party of the second part, and to her heirs and assigns forever, all their right, title, interest, estate, claim and demand, both at law and in equity, of, in and to all (description).

"The grantors herein being all of the children, and the heirs of the said Minnie Belle Stark, it is their intention to hereby vest title in said Minnie Belle Stark, in fee simple, in and to the premises described above. Together with all and singular the hereditaments thereunto belonging.

"To have and to hold the above described premises unto the said Minnie Belle Stark, heirs and assigns; so that neither the said grantors, or any person in their name and behalf, shall or will hereafter claim or demand any right or title to the said premises or any part thereof, but they and every one of them shall by these presents be excluded and forever barred."

In February, 1924, Minnie Belle Stark and her husband negotiated with John H. Fowler a loan on said premises of $9,000, which was evidenced by notes of $8,500 and

$500 and a commission mortgage of $423.70, secured by separate mortgages all executed at the same time. The deed and mortgages were all properly recorded, and in the execution thereof W. N. McLenon, cashier of appellant bank, acted as witness to the instruments and as notary certifying the acknowledgments thereof. The appellant bank thus had both actual and constructive notice of the transactions.

In September, 1925, Minnie Belle Stark died intestate, leaving her husband and four children surviving. No administration was had of her estate and the occupancy continued, otherwise, as before.

In December, 1928, the husband, John Gerry Stark, and his son, Cecil, executed appellant's mortgage securing three notes in the amounts of $500, $500, and $3,050, respectively. The mortgages described the premises with the added clause, "as the respective interests of the said grantors in and to the foregoing described real estate appear" and "subject, however, to one prior mortgage."

The status of the parties and property continued unchanged, the interest on all the mortgage debts and $500 principal of appellant's debt being paid, until after the death intestate of John Gerry Stark which occurred April 18, 1931. No administration of his estate was had, and thereafter all payments were defaulted and this suit was commenced in July, 1932. The original $8,500 mortgage to Fowler is held by plaintiff herein.

Appellant contends that the will and the deed should be so construed as to hold that Minnie Belle Stark took only a life estate under the will, which estate became extinguished by her death; that she took nothing and the grantors lost nothing by the deed to her of September 1, 1923; that the restrictive terms of the will prevented any valid conveyance by the children until after her death; and that, therefore, when she died there was no estate left upon which the plaintiff's mortgage could operate, hence the lien of the appellant stepped into first place

covering the one-third interest which the husband, and the one-sixth interest which the son, owned.

A considerable part of the briefs and argument in this court is devoted to a discussion of the limitations of the will and the rules of law pertaining to vested and contingent remainders, but we will first give attention to another phase of the case.

Appellant, upon the matter of estoppel, argues that plaintiff was charged by the record with notice of the terms of the will and consequent incompleteness of the title of its mortgagor, and that, if the title turns out to be bad, it must suffer the consequences. This may be admitted, but the question of estoppel enters the case from the opposite direction.

In this case the original mortgagee, the owner of the life estate and the defendants through whom appellant claims and has derived whatever interest it has in the subject-matter recognized an incomplete title and set about to perfect it. In so doing the deed was executed. The parties knew that they at the time were the only existing persons holding vested, contingent, or potential interest in the land. With the express purpose of so disposing of their interest as to vest in their mother the fee title, they executed the deed reciting that purpose. Thereupon, the loan was made and the plaintiff's mortgage executed, and the mortgages and the deed have stood of record and unchallenged by the grantors or any one claiming through them, throughout the remaining life and death of their mother, also that of their father, and at and after the execution of appellant's mortgage, during a total period of more than seven years before even a default was made in the payment of interest, and of eight years before the question was raised. Moreover, the appellant, having both actual and constructive notice of the will, the deed, and the prior mortgages, itself accepts its mortgage asserted in this suit which does not purport to convey a definitely described interest in the premises, but recites that it conveys only such "as the respective interests of the said

grantors in and to the foregoing described real estate appear," and that even such mortgage was "subject, however, to one prior mortgage."

We agree with the statement that there is no principle of law more elementary or better founded in reason than that all persons claiming an interest in or a lien upon real estate are bound to take notice of the recitations in a duly recorded instrument in the chain of title of their grantor. We think it is applicable to the situation of the appellant in this case.

As the title stood upon the probate of the will and before the deed, the interest which would eventually become perfected in the grantors of the deed would not be, in respect to this deed, properly an after acquired interest. It had, whether vested or contingent, a present existence with potential enjoyment, destined to completion upon the death of the mother. It was more than a prospect of inheritance. It was the actual substance, with well-defined attributes. The deed was in the chain and made by, with others, the very persons through whom appellant immediately claims. It purported to establish the grantee therein as fee simple owner. Under its recitals neither the grantors therein, nor the appellant who claims through one of them and the husband of the deceased grantee, should be allowed to repudiate the fair import of the conveyance and set up a claim in hostility thereto. *Peters v. Northwestern Mutual Life Ins. Co.,* 119 Neb. 161; *Carter v. Leonard,* 65 Neb. 670; *Hagensick v. Castor,* 53 Neb. 495; *King v. Boettcher,* 96 Neb. 319; *Van Rensselaer v. Kearney,* 52 U. S. 297.

In the case of *O'Connor v. Power,* 124 Neb. 594, it is expressly held: "While the mortgagee may ordinarily assert the invalidity of a prior mortgage, when that mortgage is a valid subsisting lien between the parties, and there are no intervening equities, he is estopped to question its priority when his mortgage contains an express recital that it is given subject to the prior mortgage."

So far as concerns the appellant, the case presents an

instance of estoppel fully established and effectually preventing the appellant from asserting the invalidity of plaintiff's mortgage.

The conclusion reached on the proposition discussed renders unnecessary the consideration of the proposition pertaining to the limitation by the will of the right of conveyance, or the kind of remainder created thereby.

The judgment of the district court is

AFFIRMED.